# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISON

| | |
|---|---|
| EMAD ALABSI, | CASE NO. 1:20-CV-01933-CEH |
| Plaintiff, | JUDGE CARMEN E. HENDERSON<br>UNITED STATES MAGISTRATE JUDGE |
| v. | MAGISTRATE JUDGE<br>CARMEN E. HENDERSON |
| CITY OF CLEVELAND, PETER SAINS, II,<br>JACK CLEVELAND CASINO LLC,<br>DANIEL R. TAYLOR, JOHN DOE,<br>POLICE OFFICERS 1-5; AND ATLANTIS<br>SECURITY COMPANY, | **MEMORANDUM ORDER AND<br>OPINION** |
| Defendants, | |

## I.     Introduction

This matter is before the Court on Defendant City of Cleveland's motion for judgment on the pleadings (ECF No. 38) and Plaintiff Emad Alabsi's motion for leave to file instanter (ECF No. 45). For the following reasons, the Court GRANTS the motion to file opposition instanter and GRANTS the motion for judgment on the pleadings.

## II.    Background

On August 30, 2019, Alabsi played poker at Jack Cleveland Casino.[1] (ECF No. 1 ¶ 9). While playing, Alabsi had a disagreement with another player and requested the casino's assistance. (ECF

---

[1] When considering a motion for judgment on the pleadings, all of the nonmoving party's allegations are taken as true. *Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). The facts are, therefore, drawn from Alabsi's amended complaint.

No. 1 ¶ 11). When the floor manager arrived, the dealer at Alabsi's table stated that Alabsi threatened another player at the table. (ECF No. 1 ¶ 12). Alabsi claims he was sober, calm, and not causing any disturbance. (ECF No. 1 ¶ 12). None of players at the table stated they had been threatened. (ECF No. 1 ¶ 12). A different dealer replaced the original dealer, but Alabsi declined to be dealt in. (ECF No. 1 ¶ 12–13).

While attempting to leave the casino, Officer Sains and Officer Taylor, two off-duty City of Cleveland police officers employed as private armed security, stopped Alabsi. (ECF No. 1 ¶ 14). The officers "grabbed and assaulted" Alabsi "without just cause or justification." (ECF No. 1 ¶ 14). The officers then charged their TASERs and threatened to use them on Alabsi. (ECF No. 1 ¶ 14).

Meanwhile, casino employees called the Cleveland Police Department and reported that Alabsi was intoxicated and engaging in disruptive behavior. (ECF No. 1 ¶ 15). When on-duty police officers arrived, they grabbed, assaulted, and violently shoved Alabsi from behind, causing injury to his neck and shoulder. (ECF No. 1 ¶ 16). The officers "slammed" Alabsi against a car in the casino garage, further injuring his shoulder and neck. (ECF No. 1 ¶ 16).

The officers then handcuffed Alabsi and took him to the basement of the casino and locked him in a room without a bathroom or means to call for help. (ECF No. 1 ¶ 17). After a lengthy period, officers informed Alabsi they were charging him with disorderly conduct. (ECF No. 1 ¶ 18). Officers told Alabsi he would be taken to jail if he did not sign the ticket. (ECF No. 1 ¶ 18). Alabsi was eventually released and charged with criminal trespass, not disorderly conduct. (ECF No. 1 ¶ 18).

### III. Procedural Background

Alabsi filed this action on August 29, 2020, against the City of Cleveland and other Defendants. (ECF No. 1). Alabsi alleged that the City was liable for intentional infliction of emotional distress under state law and for violating his federal constitutional rights under 42 U.S.C. § 1983.[2] (ECF No. 1). The City of Cleveland moved for an extension of time to answer the complaint on October 6, 2020. (ECF No. 11). The court granted the motion on October 6, 2020. (ECF No. 13). The City of Cleveland answered the complaint on November 5, 2020. (ECF No. 16). Alabsi and the City of Cleveland consented to the undersigned's jurisdiction under 28 U.S.C. § 636(c) on December 3, 2020. (ECF No. 23).

Alabsi amended his complaint on January 15, 2021. (ECF No. 33). The City of Cleveland answered Alabsi's amended complaint on January 28, 2021, asserting multiple affirmative defenses including sovereign immunity and failure to state a claim upon which relief can be granted. (ECF No. 35). The City of Cleveland then moved for judgment on the pleadings on March 30, 2021. (ECF No. 38). On June 28, 2021, after Alabsi failed to timely respond to the City of Cleveland's motion, the Court issued an order requiring Alabsi to seek the Court's leave and file his opposition instanter on or before July 12, 2021 if he planned to oppose the motion. (ECF No. 43). On July 12, 2021, Alabsi requested the court's leave to file his opposition instanter. (ECF No. 44, 45).

### IV. Standard of Review

Federal Rule of Civil Procedure 12(c) permits parties to move for judgment on the pleadings after the pleadings are closed but within such time as not to delay trial. Fed. R. Civ. P. 12(b)(6). When ruling on the motion, a court may consider only the facts contained in the pleadings. *Weiner*

---

[2] Alabsi did not name the City of Cleveland in the remaining three counts. (ECF No. 1).

*v. Klais & Co.*, 108 F.3d 86, 88–89 (6th Cir. 1997). Functionally, Rule 12(c) provides the same standard of review as a motion for failure to state a claim under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). All of the non-moving party's well-pleaded material allegations are taken as true. *Id*.

The court, however, is not bound to accept legal conclusions couched as factual allegations or mere recitations of the elements of the cause of action. *Id*. The "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Com. Money Ctr. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336–37 (6th Cir. 2007). The factual allegations in the complaint must be sufficient to notify the defendant of the claims alleged, and "the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*, 592 F.3d at 722 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The motion may only be granted if the moving party is "clearly entitled to judgment." *Id*. (internal citations omitted).

## V.     Discussion

Alabsi maintains two causes of action against the City of Cleveland: 1) intentional infliction of emotional distress and 2) a violation of his federal constitutional rights under 42 U.S.C. § 1983. Alabsi requests compensatory and punitive damages. The City of Cleveland contends that it is immune from liability for claims of intentional infliction of emotional distress under Ohio law. Alternatively, the City argues that Alabsi failed to plead sufficient facts in support of an intentional infliction of emotional distress claim. The City also asserts that Alabsi did not sufficiently plead a § 1983 claim. Further, if the Court does not dismiss the claims, the City maintains that it is absolutely immune from punitive damages.

A.     **Intentional Infliction of Emotional Distress**

The Court must first address whether the City of Cleveland is immune from the Ohio intentional infliction of emotional distress claim. The city asserts that it is immune from liability under Ohio Rev. Code § 2744.02. Notably, Alabsi failed to respond to the City's immunity argument. The Court agrees with the City of Cleveland.

Ohio Rev. Code Chapter 2744 requires a three-tiered analysis when determining whether sovereign immunity applies to a political subdivision. *Greene Cnty. Agric. Soc'y v. Liming*, 733 N.E.2d 1141, 1146 (Ohio 2000). First, § 2744.02(A)(1) sets out the general rule:

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Ohio Rev. Code § 2744.02(A)(1).

Second, Division B enumerates five exceptions that preclude immunity for political subdivisions. Political subdivisions are liable for injury, death, or loss to person or property:

1) "caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority"
2) "caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions"
3) "caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads"
4) "caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function"
5) "when civil liability is expressly imposed upon the political subdivision by a section of the [Ohio] Revised Code"

Ohio Rev. Code § 2744.02(B)(1)–(5). If the court finds that one of the exceptions applies, it proceeds to the third tier of the analysis—determining whether any of the defenses in § 2744.03 apply. *Greene*, 733 N.E.2d at 1146.

Beginning with the first tier, a "political subdivision" "means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of a state." Ohio Rev. Code § 2744.01(F). The city of Cleveland meets this definition. *See Harris v. Sutton*, 918 N.E.2d 181, 185 (Ohio Ct. App. 2009) ("It is undisputed that the city of East Cleveland is a political subdivision."). As such, the city is immune from liability for injury caused by its employees in connection with governmental and proprietary functions.

Second, the only exception potentially applicable is § 2744.02(B)(2)—injury caused by the negligent acts performed by employees with respect to proprietary functions. However, well-established caselaw in Ohio makes it clear that this exception does not apply to intentional torts. *See Harris*, 918 N.E.2d at 186 ("[R]elying on the statutory language of R.C. 2744.02(b), Ohio courts consistently have held that political subdivisions are immune from intentional tort claims." (citations omitted)). Because Alabsi claims intentional infliction of emotional distress, there is no exception abrogating immunity. Finding no exception, the court does not need to proceed to the third tier. The City of Cleveland is, therefore, immune from liability for the claim of intentional infliction of emotional distress, making dismissal proper.

Because the Court finds dismissal of Count I proper based on the City of Cleveland's immunity, it need not address the alternative argument regarding insufficient pleading.

**B.        Section 1983**

Section 1983 creates a federal cause of action against "any person" who deprives another of a federal constitutional right while acting under color of state law. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). A city can be a "person" for purposes of the statute. *Monell*, 436 U.S. at 692. The city, however, cannot be held liable under § 1983 on a theory of *respondeat superior*—for employing a tortfeasor. *Id.* Thus, the city can be liable "only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d] one of its employees to violate the plaintiff's constitutional rights.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (alteration in original) (quoting *Monell*, 436 US. at 692). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

To satisfy the *Monell* requirements, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citations omitted). There are four methods of showing the municipality had a policy or custom. The plaintiff may prove: 1) "the existence of a policy or legislative enactment;" 2) "an official with final decision making authority ratified illegal actions;" 3) "a policy of inadequate training or supervision;" or 4) "a custom of tolerance [of] or acquiescence [to] federal rights violations." *D'Ambrosio*, 747 F.3d at 387 (alterations in original) (citations omitted).

Alabsi's amended complaint alleges four unconstitutional customs or policies that the City of Cleveland employs. (ECF No. 1 ¶¶ 19–22). First, the complaint alleges that the City of Cleveland "had a policy or practice of harassing persons and physically assaulting, falsely

imprisoning, and threatening/charging persons with false and unwarranted charges." (ECF No. 1 ¶ 19). Second, that the City of Cleveland "condoned or ratified the unlawful actions against innocent persons by" the police officers. (ECF No. 1 ¶ 20). Third, that the City of Cleveland "had a policy or practice of threatening to charge persons with violations of city ordinances or state law for engaging in behavior unrelated to the threatened charges." (ECF No. 1 ¶ 21). Finally, the City of Cleveland "condoned or ratified the threats by [the officers] to charge persons with violations of city ordinances or state law for engaging in behavior unrelated to the threatened charges." (ECF No. 1 ¶ 22).

Alabsi does not point to a formal policy, a decision by an official with decision making authority, or a policy of inadequate training or supervision. He, instead, relies on a custom of tolerance or acquiescence of federal rights violations. In these instances, "the critical question is whether there is a particular custom or practice that 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010) (citations omitted).

Alabsi's complaint does not sufficiently state a § 1983 claim under this theory. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Alabsi states that the City of Cleveland has "a policy or custom" but does so in a conclusory manner. Alabsi makes no factual allegations of similar incidents by City of Cleveland police officers. "To merely state that the City has a policy or custom is not enough; [the P]laintiff must allege facts, which if true, demonstrate the City's policy, such as examples of past situations where law enforcement officials" have

committed similar constitutional violations. *Williams v. City of Cleveland*, No. 1:09 CV 1310, 2009 WL 2151778, at *4 (N.D. Ohio July 16, 2009).

To be sufficient, Alabsi needed to allege other instances of the City of Cleveland police harassing, physically assaulting, falsely imprisoning, and threatening others with false and unwarranted charges. *See Lewis v. City of Cleveland*, No. 1:13 CV 589, 2013 WL 5564146, at *2 (N.D. Ohio Oct. 8, 2013) ("[O]*ne isolated incident cannot be the basis for a pattern or policy claim*."). Even if Alabsi's allegations are accepted as true, he has not alleged any facts of a clear and persistent pattern of illegal activity. *Hill v. City of Cincinnati*, No. 1:09-cv-800, 2010 WL 3257725, at *5 (S.D. Ohio July 15, 2010) ("At a minimum, plaintiff must allege facts showing 'the existence of a clear and persistent pattern of illegal activity' or facts showing the City was aware of prior unconstitutional actions by members of its police force . . . ." (citations omitted)). Accordingly, even if all factual allegations are accepted as true, Alabsi does not state a plausible claim for relief against the city. Alabsi's § 1983 claim against the City of Cleveland is, therefore, dismissed.

Because the Court finds that dismissal is proper for all claims against the City of Cleveland, it need not address whether the City can be liable for punitive damages.

## VI. Conclusion

For these reasons, the Court GRANTS Alabsi's timely motion for leave to file instanter. The Court GRANTS the City of Cleveland's motion for judgment on the pleadings and all claims against the City of Cleveland are dismissed.

IT IS SO ORDERED.

DATED: August 25, 2021                                                              */s/ Carmen E. Henderson*

Carmen E. Henderson
United States Magistrate Judge