IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| EMAD ALABSI, | ) | CASE NO. 1:20-CV-01933-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| CITY OF CLEVELAND, CITY OF CLEVELAND POLICE DEPARTMENT, PETER SAINS, II, BRUCE TAYLOR, JACK CLEVELAND CASINO LLC, DANIEL R. TAYLOR, JOHN DOE, POLICE OFFICERS 1-5; AND ATLANTIS SECURITY COMPANY, | ) ) ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendants, | | |

I. **Introduction**

This is before the Court on Defendant Jack Cleveland Casino LLC's ("Jack Cleveland") motion for summary judgment. For the reasons discussed below, the motion is GRANTED.

II. **Factual Background**

Emad Alabsi is a professional poker player.[1] (ECF No. 59-1 at 11). On August 30, 2019, Alabsi spent approximately twelve hours playing poker at Jack Cleveland Casino. (ECF No. 59-1 at 19–20). Alabsi had consumed multiple drinks but was not drunk. (ECF No. 59-1 at 27–28).

---

[1] The Court construes the facts in the light most favorable to Alabsi. *See Lindsey v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009) ("In evaluating a party's summary judgment motion, a court must 'consider all facts and inferences drawn therefrom in the light most favorable to the nonmoving party.'" (citations omitted)).

Sometime after midnight, another player, Dustin Hoffman, began antagonizing Alabsi. (ECF No. 59-1 at 30–31). Hoffman had been winning and mocked Alabsi. (ECF No. 59-1 at 60). After Hoffman made a few comments to Alabsi, Alabsi said something along the lines of "Dustin, enough is enough. Believe it or not, if you do this somewhere else to someone else you don't know, believe me, you would be spitting your teeth out because nobody will keep up with your shit." (ECF No. 59-1 at 61). Alabsi then requested that the dealer ask Hoffman to stop his comments. (ECF No. 59-1 at 39, 56). The dealer did not comply. (ECF No. 59-1 at 56). Alabsi began yelling "floor" in a loud voice, hoping that the floor manager would come resolve the situation. (ECF No. 59-1 at 54–55). When the floor manager arrived, she spoke to the dealer. (ECF No. 59-1 at 56). The dealer told the floor manager that Alabsi threatened Dustin by saying that he was going to knock Hoffman's teeth out so that he would be drinking through a straw and taken out on a stretcher. (ECF No. 59-1 at 63–64). Not wanting to continue the situation, Alabsi left the table and went to the ticket podium to validate his parking. (ECF No. 59-1 at 36).

Before he could leave, two off-duty Cleveland police officers came to escort Alabsi off the premises. (ECF No. 59-1 at 36). Alabsi explained that he was leaving but one of the officers grabbed his arm. (ECF No. 59-1 at 37). Alabsi protested and again told the officers that he was leaving. (ECF No. 59-1 at 36). The other officer "hit [Alabsi] with his chest" and grabbed his arm. (ECF No. 59-1 at 36). When Alabsi resisted, the officer pulled a taser out but did not use it. (ECF No. 59-1 at 37). The officers walked Alabsi down the escalator and took his poker chips. (ECF No. 59-1 at 37). The officers continued to shove Alabsi until he was in the parking garage near his car. (ECF No. 59-1 at 39). Alabsi requested the officers' names and badge numbers but they refused to give them to him. (ECF No. 59-1 at 86). Eventually, they pushed Alabsi against a car, handcuffed him, and dragged him back inside the casino. (ECF No. 59-1 at 39, 88). The officers

took Alabsi into a room and held him there. (ECF No. 59-1 at 89). Alabsi was not allowed to use the restroom or leave for any purpose. (ECF No. 59-1 at 90). The officers gave Alabsi a citation for disorderly conduct. (ECF No. 59-1 at 94). The officers eventually let Alabsi leave.

Alabsi was charged with trespass. (ECF No. 59-1 at 100). The charge was dismissed. (ECF No. 59-1 at 105). Jack Cleveland banned Alabsi from entering the casino for one year.[2] (ECF No. 59-1 at 105). Since then, Alabsi has suffered from depression and anxiety. (ECF No. 59-1 at 106). He has gone to see a psychologist and psychiatrist and is still taking medication as a result. (ECF No. 59-1 at 106). Additionally, Alabsi stated he had shoulder surgery and a problem with his neck because of the officers' physicality. (ECF No. 59-1 at 107).

### III. Procedural Background

On August 29, 2020, Alabsi brought this suit against Jack Cleveland and other Defendants. (ECF No. 1). After a judgment on the pleadings (ECF No. 47) and voluntary dismissals (ECF Nos. 31, 34, 50), Jack Cleveland is the only defendant remaining. The remaining claims allege: 1) defamation; 2) abuse of process; and 3) intentional infliction of emotional distress. (ECF Nos. 1, 33). On January 18, 2022, Jack Cleveland filed a motion for summary judgment on all remaining claims. (ECF No. 60). Alabsi timely responded. (ECF No. 66). Jack Cleveland replied. (ECF No. 67).

### IV. Standard of Review

On a motion for summary judgment, the Court considers all facts in the light most favorable to the non-moving party. *Lindsey v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court may not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). To be entitled to summary judgment, the moving party must demonstrate

---

[2] This was not Alabsi's first ban from Jack Cleveland. (ECF No. 59-1 at 49–53).

that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. As noted, the burden of demonstrating the absence of a genuine dispute of material fact first rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the non-movant to establish a "genuine issue" for trial via "specific facts." *Id.* at 324. The Court is required to enter summary judgment against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Ultimately, the Court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson*, 477 U.S. at 252.

V.    **Law and Analysis**

    A.    **Defamation**

Defamation "is the publication of a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business, or profession.'" *Woods v. Capital Univ.*, No. 09AP-166, 2009 WL 3465827, at *6 (Ohio Ct. App. Oct. 27, 2009) (citations omitted). To survive a motion for summary judgment, the plaintiff must establish: "(1) a false and defamatory statement of fact; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) which was either defamatory per se or caused special harm to the plaintiff." *Hurst v. Moore*, No. 17-CA-4, 2017 WL 3500412, at *3 (Ohio Ct. App. Aug. 15, 2017). Defamation falls into one of two categories: defamation per se or defamation per quod. *Woods*,

2009 WL 3465827, at *6. To be considered defamation per se, the defamatory statement "fit within one of four classes: (1) the words import a charge of an indictable offense involving moral turpitude or infamous punishment; (2) the words impute some offensive or contagious disease calculated to deprive a person of society; (3) the words tend to injure a person in his trade or occupation; and (4) in cases of libel only, the words tend to subject a person to public hatred, ridicule, or contempt." *Id.* (citations omitted). "On the other hand, a statement is defamatory per quod if it can reasonably have two meanings, one innocent and one defamatory." *Id.* (citations omitted).

Here, the statements at issue are that Alabsi "had threatened another poker player named Dustin Hoffman, that he refused to leave the Jack Cleveland Casino (criminal trespass), and that he engaged in disorderly conduct at the Casino." (ECF No. 66 at 9). These statements were allegedly published by the floor person, Hayleigh Lesner, to police officers. (ECF No. 66 at 10). Jack Cleveland assumes all Alabsi's factual allegations are true. Jack Cleveland argues that (1) the statements made were true or substantially true, (2) the statements were entitled to qualified immunity, (3) the statement was not made with the requisite degree of fault, and (4) Alabsi has not established any damages proximately caused by the statements. The Court acknowledges that there are multiple deficiencies with Alabsi's defamation claim. Most glaring, however, is the lack of evidence of fault on the part of Jack Cleveland.

"In cases involving the defamation of private persons, an ordinary negligence standard is applied. Private-person defamation plaintiffs must show by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication." *Fuchs v. Scripps Howard Broad. Co.*, 868 N.E.2d 1024, 1034 (Ohio Ct. App. 2006) (footnotes and citations omitted). In his response to Jack Cleveland's motion for

summary judgment on this claim, Alabsi alleges the following under the heading "fault on the part of Defendant":

> In the instant case, Paul Swanberg, an employee of the Defendant Jack Cleveland Casino, made the initial false accusation against Mr. Alabsi that he had threatened another poker player, Dustin Hoffman. (Alabsi Depo TR 55; Swanberg Depo TR 7-9). Mr. Alabsi then yelled for assistance from Defendant's floor manager, Paul Booth, who was at the casino podium where parking is validated. (Alabsi Depo TR 54- 57). Mr. Alabsi then indicated to the poker table that he was finished playing poker that night and was leaving the casino premises. (Alabsi Depo TR 36, 102). No one asked Mr. Alabsi to leave the casino premises—he chose to do so his own accord. (Alabsi Depo TR 36, 102; Booth Depo TR 8; Swanberg Depo TR 12-13). Mr. Alabsi then left the casino's poker room and proceeded to the podium to get his parking validation, before exiting the casino premises altogether. (Alabsi Depo TR 36-39; Booth Depo TR 8). At the podium, Mr. Alabsi was approached by two Atlantis Security Company security guards—the moonlighting Cleveland Police Officers Sains and Taylor—who had been falsely told by Casino employee Hayleigh Lensner that Mr. Alabsi had threatened another poker player named Dustin Hoffman, that he refused to leave the Jack Cleveland Casino (criminal trespass), and that he engaged in disorderly conduct. (Alabsi Depo TR at 100-102).

(ECF No. 66 at 10–11).

This "response" does not mention fault, negligence, or reasonableness a single time. Although Alabsi argues that the statement was "false," that is not enough. Alabsi has the burden of proving that Jack Cleveland made the false statement with the requisite mental state—which is, at a minimum, negligence. Alabsi was required to show that Jack Cleveland failed to act reasonably in attempting to discover the truth of the statement. Alabsi does not state that Paul Booth negligently or purposefully made the false statement. Moreover, he does not state that it was unreasonable for Ms. Lesner to rely on her employee's statement that Alabsi had threatened another player. *See Fuchs*, 868 N.E.2d at 1038 (affirming a grant of summary judgment for the defendant where there was no evidence that the speaker had any reason to disbelieve the employee

who reported the statement to her). Alabsi has failed to demonstrate—or even state—that Jack Cleveland was negligent or unreasonable for reporting anything to the police officers. Alabsi, therefore, has failed to establish the existence of an essential element of his defamation claim. Accordingly, the Court grants Jack Cleveland's motion for summary judgment on the defamation claim.

B. **Abuse of Process**

Abuse of process involves the proper use of process "initiated for improper purposes." *Robb v. Chagrin Lagoons Yacht Club*, 662 N.E.2d 9, 14 (Ohio 1996) (citations omitted). To establish a claim for abuse of process, the plaintiff must prove: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994) (footnote omitted). "[T]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property of the payment of money, by the use of the process as a threat or a club." *Robb*, 662 N.E.2d at 14 (citations omitted). In other words, "abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order. *Id.*

Alabsi contends that Jack Cleveland "wrongfully accused [Alabsi] with committing one or more criminal acts for the improper purpose of banning him from the casino premises." (ECF No. 66 at 13). Alabsi refers to the criminal case that was brought against him for trespassing. Jack Cleveland argues that, even assuming Alabsi's facts are all true, Alabsi cannot succeed on this claim. First, Jack Cleveland argues that Alabsi alleges that there was no probable cause, precluding

success. Second, Jack Cleveland asserts that Alabsi cannot establish an improper purpose. The Court will take the second argument first.

"In determining whether an 'ulterior motive' element is satisfied, the critical inquiry is whether the plaintiff is using the court proceeding to obtain a benefit or remedy against the defendant 'that which the court is itself powerless to order in the proceeding.'" *Sivinski v. Kelley*, No. 94296, 2011 WL 1744262, at *6 (Ohio Ct. App. May 5, 2011) (citations omitted). Ulterior motive "generally involves an attempt to gain an advantage outside the proceeding, using the process as a threat." *Id.* at *7 (citations omitted). It does not, on the other hand, "occur when a party uses the court to pursue a legal remedy that the court is empowered to give." *Id.* (citations omitted). "[T]here is no liability for abuse of process where defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* (citations omitted).

Regarding ulterior motive, Alabsi argues that Jack Cleveland pursued this action "for the improper purpose of banning him from the casino premises." (ECF No. 66 at 13). This does not satisfy the ulterior motive requirement. A court has the power to keep Alabsi from the premises, whether through an injunction or a protective order. This precludes Alabsi from demonstrating an ulterior motive. Additionally, Jack Cleveland had—and used—the power to ban Alabsi from the premises on its own. Jack Cleveland did not need to use a court order as a threat to achieve such a result. There was no "ulterior motive" outside of the proceeding. The fact that Alabsi contends that Jack Cleveland did not follow its normal policy in removing him from the casino is not enough. Accordingly, the Court grants summary judgment for Jack Cleveland on Alabsi's abuse of process claim.

    **C.**    **Intentional Infliction of Emotional Distress**

The elements required for an intentional infliction of emotional distress claim are: (1) "the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;" (2) "the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community;'" 3) "the actor's actions were the proximate cause of plaintiff's psychic injury;" and 4) "the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" *Martin v. Wills*, No. 16 MA 0091, 2017 WL 6804072, at * (Ohio Ct. App. Dec. 27, 2017) (citations omitted). Jack Cleveland argues that Alabsi cannot show that the relevant actions amounted to extreme and outrageous conduct.

"Whether conduct is 'extreme and outrageous' is initially a question of law for the court." *Morrow v. Reminger & Reminger Co. LPA*, 915 N.E.2d 696, 714 (Ohio Ct. App. 2009) (citations omitted). The Ohio Supreme Court has adopted the standard set forth in the Restatement (Second) of Torts for "extreme and outrageous conduct. *Id.* at 713. The standard provides:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Id.* at 713–14 (citations omitted).

The extreme and outrageous conduct alleged here is Jack Cleveland's allegedly false accusations that Alabsi threatened another poker player, that Alabsi refused to leave the casino, and that he engaged in disorderly conduct at the casino.[3] Alabsi also includes Jack Casino's removing and banning him from the casino premises and causing him to be charged with a criminal offense as part of the "extreme and outrageous" conduct. Considering the facts in the light most favorable to Alabsi, the Court concludes that this conduct is not "extreme and outrageous." Even if done maliciously, the fact that Jack Cleveland's employee lied about Alabsi's threat and stated he was being disorderly and would not leave does not go beyond all bounds of possible decency. That the supervisor may have believed the statement—or even if she did not and acted maliciously—and called the off-duty police officers to escort Alabsi out and charge him with trespass does not amount to atrocious and utterly intolerable behavior. Similarly, it is not extreme and outrageous behavior to ban someone from a casino. Summary judgment is, therefore, appropriate.

## VI. Conclusion

For these reasons, the Court GRANTS summary judgment to Defendant on Plaintiff's defamation, abuse of process, and intentional infliction of emotional distress claims. There are no remaining claims. The case is, therefore, terminated in its entirety

**IT IS SO ORDERED.**

Dated: March 23, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

[3] Alabsi also states that the off-duty police officers' actions of restraining Alabsi and removing him from the casino amount to intentional infliction of emotional distress. However, Alabsi voluntarily dismissed the off-duty police officers and the security company that employed them from this case. The Court fails to understand—and Alabsi fails to explain—how Jack Cleveland could be liable for their actions.